# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| NEAL WOOTEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.: |
| | ) _____ |
| MARK HERNDON; THE FRESH | ) |
| INK GROUP, LLC, | ) |
| | ) |
| Defendants. | ) |

## STATEMENT OF JURISDICTION

1.  This action arises under a federal statute, 17 U.S.C. § 504 (copyright violation) and, this Court has federal question jurisdiction under Copyright law and 28 U.S.C. § 1331. Venue is appropriate in this Court as both the Plaintiff and Defendant Herndon are residents of the Northern District of Alabama. (DeKalb County, Alabama) and most of the acts at issue of Defendants took place therein. This Court also has pendent jurisdiction of additional common law claims presented herein.

## THE PARTIES

2.  Plaintiff, Neal Wooten, is an individual who is a professional writer/author, and resides in DeKalb County, Alabama.

3.  Defendant, Mark Herndon, is an individual who is a former drummer in the well-known musical group known as "Alabama." Defendant, Herndon, is a

resident of DeKalb County, Alabama who published an autobiographical book: "The High Road: Memories from a Long Trip" in March 2016.

4. Defendant, The Fresh Ink Group, LLC, is a Texas corporation with its principal place of business in Roanoke, Texas. This Defendant published the book: "The High Road: Memories From a Long Trip" with Defendant Herndon, and hold the purported copyright at issue with this book.

## FACTUAL BACKGROUND

5. This action involves a "joint work" under the Copyright Act 17 U.S.C. § 101 defines a "joint work" as follows:

> "A joint work is a work prepared by two or more authors with the intention that their contribution be merged into inseparable or interdependent parts of a unitary whole."

In such a "joint work", "the joint authors hold undivided interests in a work, despite any differences in each author's contributions." *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1068 (7th Cir. 1994) The Committee reports for the Copyright Act state, in pertinent part:

> "A work is "joint" if the authors collaborated with each other, or if each of the authors prepared his or her contribution with the knowledge and intention that it would be merged with the contributions of other authors as 'inseparable or interdependent parts of a unitary whole.' The touchstone here is the intention, at the time the writing is done, that the parts be absorbed or combined into an integrated unit. (House Report at 120; Senate Report at 103, U.S. Code Cong. & Admin. News 1976, pp 5736."

(See, *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061 at 1068)

Evidence of joint authorship for purposes of copyright ownership is joint laboring in furtherance of a preconceived common design. *Neva, Inc. v. Christian Duplications Intern., Inc.*, 743 F.Supp. 1533 (N.D. Fla. 1990) Each author's contributions need not be equal either quantitavely or qualitatively but there must be substantial contribution to the final product. *Designer's View, Inc. v. Publix Supermarkets, Inc.*, 764 F. Supp. 1473, at 1477 (S.D. Fla. 1991) A co-author is entitled to share in the profits of the work. *Gaiman v. McFarlane* 360 F.3d 644 (7th Cir. 2004)

6. Plaintiff, Neal Wooten, is a professional writer/author, who among other books, wrote the acclaimed novel "Reternity." On March 6, 2011, Plaintiff contacted the Defendant by email inquiring whether the Defendant had ever thought of putting his life experiences in a book. Plaintiff stated in this email: "I would be honored to be able to team up with you to write the best biography out there." The Defendant responded that he would "definitely need a ghost writer, but mostly I don't think I have that much to say to the world that hasn't already been said." Plaintiff continued to send emails to Defendant referencing that he knew the Defendant was also a pilot and also referenced his own previous book "Reternity." Defendant responded to Plaintiff's continued urging that such a book would be interesting by stating on January 15, 2012 that "Reternity" was "a profound

BEAUTIFUL story." Defendant went on to state in an email to Plaintiff: "I don't believe much in co-incidence, thus making me wonder how it was that you reached out to me seemingly out of the blue." The email continued:" That said, I would be interested in working with you when the time is right…your book was a gift and perhaps you are too…never know do we?"

7. The parties continued to correspond by email with Plaintiff continuing to urge Defendant to do a book with Plaintiff's professional assistance as a writer. On March 6, 2012, Plaintiff emailed Defendant about an image of Defendant with the title: "Mark Herndon: Stickman" because as a pilot he used a control stick and, as a drummer, he used sticks. The title of "Stickman" became the reference line for their correspondence and eventually, after an agreement for working jointly on this project, several jacket cover ideas were produced which are attached hereto as Exhibits 1, 2, 3 & 4 which are made a part of this Complaint. (The published book cover is attached as Exhibit 5.)

8. On March 10, 2012, Defendant sent an email to Plaintiff stating: "I am beginning to feel the push in my heart to do this…no deadlines of course, at least right now. I'm just going to compile some things. If you are still interested, I would like you to come aboard."

9. After many more emails and thoughts on this joint project, the Defendant began sending rough drafts of chapters for his autobiography to the

Defendant. Defendant was editing and polishing the writings and suggesting chapter titles and flow of the work. Many hours of work were devoted by Plaintiff to forming a manuscript for the work. While Plaintiff was performing this work he was continuing to prod the Defendant into their formalizing an agreement. Phone conversations took place and such formality was delayed by Defendant, Herndon, while he was making rough drafts for Plaintiff's review and suggestions as a professional writer. Finally, Plaintiff emailed Defendant on January 19, 2014, saying that the work was progressing but some decisions needed to be made. "For example, I know you mentioned the term 'ghost writer' before, but I would prefer to have credit. You would be listed as the author and it would say "with Neal Wooten" like Randy Owen's book for example…the least of my concerns is money, but you can let me know what you had in mind. If you want to do a % deal, or however you want to do it, just let me know." The following day, January 20, 2014, Defendant responded to Plaintiff's email saying: "Neal, I have no problem sharing credit, or a percentage…whatever we work out." The basic agreement of showing credit "With Neal Wooten" and a percentage were formalized of this written exchange.

10. In February 2014, Plaintiff emailed Defendant that they now had the following chapters on back file: Chapter One: Descent Into Darkness; Chapter Two: Gypsy Blood; Chapter Three: Peacenik Bullies; Chapter Four: Boys Will Be Boys; Chapter Five: The Prom Czar; Chapter Six: Our Pad is the Bomb; Chapter Seven:

Ten-Hut; Chapter Eight: A Wing and A Prayer. By February 25, 2014, the "back file" was up to 12 chapters. By March 25, 2014, it was up to 22 chapters. On March 31, 2014, Defendant emailed Plaintiff that he liked the chapter list proposed by Plaintiff. By June 2014, Plaintiff wrote Defendant that the manuscript was clean and they now needed to get a professional proof-reader to review it. By September 2014, several cover pictures were suggested and approved for this "Mark Herndon: Stickman" work. (See attached Exhibits 1, 2, 3 & 4 clearly showing the credit "With Neal Wooten" that had earlier been agreed upon and now finds confirmation in the proposed covers for the book) Defendant emailed Plaintiff on September 23, 2014, stating these proposed book covers were good – "Yes, that is close to the vision I had." In November 2014, Defendant wrote Plaintiff that he liked the inserts made by Plaintiff but wanted some "minor changes made to reflect a more 'in your words' sound to it."

11.  Plaintiff had been working with Camden Military Academy to get biographical information about Defendant to include in the book. In December 2014, Diane Robinson at the academy wrote Plaintiff about the book he was working on for one of their alumni (Mark Herndon) and requesting authority to "put a little boost for the book on Herndon in our newsletter, the Bugle." On February 2, 2015, Plaintiff emailed Defendant about the book cover saying "…and 'With Neal Wooten' still needs to go on there, bottom center I would think."

12. Surprisingly, on February 8, 2015, Defendant emailed Plaintiff with a response stating: "I feel that putting anyone else's name on the cover would dilute the impact of the story actually being my words." He went on to state: "Of course you will receive the percentage agreed upon and as mentioned, creds o'plenty in the thanks section." On February 9, 2015, Defendant emailed Plaintiff again and stated: "…we agreed upon 15 percent of gross sales, the high side of the industry standard." Plaintiff responded to this email on that same day emphasizing "my role has been one of a contributory author – to the letter" and compared this contribution to what had been done on Chris Kyle's book about that famous American sniper. On February 12, 2015, Defendant emailed Plaintiff about his obvious upsets about not being given the credit agreed upon. He acknowledged that he would also be upset if their roles were reversed. "After mulling over this whole thing for many, many hours, I have concluded that the big picture and the enormous amount of time spent by us both on it, is worth way more than a singular upset." He suggested that they talk. One phone call conversation took place but the Defendant was still obstinate on not putting Plaintiff's credit on the cover of the book. Plaintiff wrote Defendant reminding him that he could use Defendant's original rough writing but not the manuscript of this joint work. However, in March 2016, the book, "The High Road: Memories from a Long Trip" was published by Defendants using the same essential manuscript compiled by Plaintiff. The title had changed but the essential image of

the Defendant being a pilot and a drummer was conveyed on the cover with no credit given to its joint author, Plaintiff. The book was published by Defendant, The Fresh Ink Group, LLC, and, on the inside cover, indicates that Defendant edited the book and holds copyright. The joint authorship and editing was actually done by Plaintiff and the substantial majority of the book is his manuscript. No credit, acknowledgement or thanks of any kind is extended to Plaintiff in this book.

## COUNT I – COPYRIGHT INFRINGEMENT AND VIOLATION

13.     Plaintiff avers that Defendants have committed copyright infringement and violation pursuant to 17 U.S.C. § 504. Defendants have failed to give the required and agreed upon credit for this "joint work" on the manuscript that essentially became the published work titled: "The High Road: Memories from a Long Trip" which was published by Defendants in March 2016. Plaintiff avers that he was a contributing author, editor and collaborator on this work and the credit of this work was to be jointly shared with Defendant, Herndon, listed as the author "With Neal Wooten." Defendant Herndon intentionally failed to give the agreed upon credit to Plaintiff as evidenced by the email from Defendant on January 20, 2015. Defendant, The Fresh Ink Group, LLC, clearly had knowledge of the joint work and manuscript contributed by Plaintiff but assumed full copyright in violation of the law regarding "joint work." Plaintiff spent a large amount of time, effort and work on bringing this intended collaboration to a final manuscript. This "joint work"

manuscript proposed and prepared by Plaintiff was the essence of the finally published book without the agreement by Plaintiff after he had been informed that credit would not be given to him on the cover of this joint work. Plaintiff is entitled to the agreed upon percentage of 15% of gross sales of the book and makes claim of all Defendants for that sum and accounting for such gross sales. Plaintiff further demands the published credit which he was due as a joint author of this work. Plaintiff is entitled to an undivided joint interest in the copyright of this book/work under 17 U.S.C. § 101 and § 201. As a proximate consequence of Defendants' clear and intentional violation of the Copyright Act, Plaintiff has been caused to suffer lack of credit for his joint authorship and contribution to this book; he has been caused to suffer financial loss due to no accounting, payment or recognition of this agreed upon percentage of the gross sales of this work; he has been caused to suffer mental anguish and loss of reputation in the professional writing community by the withholding of his agreed upon credit for "With Neal Wooten" despite his professional efforts and collaboration on the intended but unrecognized joint work.

## COUNT II – BREACH OF CONTRACT

14. Plaintiff further avers that the Plaintiff and Defendant Herndon had an agreed upon contract that Plaintiff would be given credit as a joint author by the announced credit "With Neal Wooten" and that he would receive 15% of all gross sales on this work. Defendant has breached this contractual agreement by using the

manuscript created by this joint collaboration without credit to Plaintiff and in spite of Plaintiff's instruction that if he were not given the agreed upon credit, Defendant could not use this jointly created manuscript. As a proximate consequence of Defendant's breach of this agreement, Plaintiff has been caused to have his efforts and manuscript to go without professional credit and copyright; copyright has been listed as being solely with The Fresh Ink Group, LLC; he has been caused to suffer financial loss by having his many hours of effort dedicated to this joint work to go uncompensated and unrecognized; Plaintiff avoided work on other matters while he dedicated his efforts to this work; he was caused to suffer an impaired reputation and recognition in his occupation as a professional author.

## COUNT III – CONVERSION

15. Plaintiff further avers that Defendants have, separately and severally, intentionally converted the manuscript compiled by Plaintiff and used it for their own publication against the instructions of Plaintiff when Defendant Herndon informed Plaintiff he would not be given the agreed upon credit for this joint work. Plaintiff had an undivided interest and ownership in the work and the manuscript was converted by Defendants in an intentional and wrongful conversion when it was published by Defendants without credit to Plaintiff and against his instructions that it not be used but Defendant Herndon could use his own notes and rough drafts. As

a proximate consequence thereof, Plaintiff was injured and damaged as set forth in paragraph 13 above.

### COUNT IV – FRAUD AND MISREPRESENTATION

16. Plaintiff further avers that Defendant Herndon has published the joint work/book described above in a false, deceitful and misrepresented manner by representing that this was his sole work and not done in joint authorship "With Neal Wooten" as described in detail above. Defendant has negligently, wantonly or intentionally committed this fraud, deceit and misrepresentation and has fraudulently suppressed the truth that this manuscript/work was a joint collaboration not simply a work by Defendant. As a proximate consequence thereof, Plaintiff has been injured and damaged as set forth in Paragraph 13 above.

WHEREFORE, Plaintiff demands judgment against Defendants in such sums of compensatory and punitive damages as a jury may assess after a full and fair consideration of the facts. Plaintiff also demands payment of his expense and attorneys' fees incurred in the prosecution of this action.

Stephen D. Heninger (ASB-5227-e68s)

/s/ Stephen D. Heninger
STEPHEN D. HENINGER (ASB-5227-e68s)

Attorney for Plaintiff

OF COUNSEL:

**HENINGER GARRISON DAVIS, LLC**
P. O. Box 11310
Birmingham, Alabama 35202
Telephone: (205) 326-3336
Facsimile: (205) 326-3332
E-mail: Steve@hgdlawfirm.com

Plaintiff demands trial by struck jury on all issues raised herein.

Stephen D. Heninger (ASB-5227-e68s)

/s/ Stephen D. Heninger
STEPHEN D. HENINGER (ASB-5227-e68s)

**Serve Defendants by Certified Mail as follows:**

**MARK HERNDON**
1635 County Road 516
Rainsville, Alabama 35986-4207

**THE FRESH INK GROUP, LLC**
P.O. Box 525
Roanoke, TX 76262